SHEPPARD N. MOORE, PLAINTIFF v. NORTH CAROLINA COOPERATIVE EXTENSION SERVICE; NORTH CAROLINA STATE UNIVERSITY COLLEGE OF AGRICULTURE AND LIFE SCIENCES; EVERETT M. PROSISE, DISTRICT EXTENSION DIRECTOR, NORTH CAROLINA COOPERATIVE EXTENSION SERVICES, IN HIS OFFICIAL CAPACITY; F. DANIEL SHAW, COUNTY DIRECTOR, NORTH CAROLINA COOPERATIVE EXTENSION SERVICES, NORTH CAROLINA STATE UNIVERSITY COLLEGE OF AGRICULTURE AND LIFE SCIENCES, IN HIS OFFICIAL CAPACITY; NORTH CAROLINA STATE UNIVERSITY; AND THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA00-961

(Filed 4 September 2001)

**1. Appeal and Error— appealability—denial of summary judgment—sovereign immunity**

The denial of a motion for summary judgment was immediately appealable where defendants had asserted a claim of sovereign immunity.

**2. Public Officers and Employees— extension agent—state employee with valid contract**

Defendants were not protected by sovereign immunity and the trial court did not err by denying defendants' motion for summary judgment where plaintiff was an Area Education Extension

Agent, the letter which offered plaintiff the appointment indicated that the position would be evaluated at the end of three years and a decision made then as to whether to continue the position, plaintiff began his employment on 1 August 1994, plaintiff was notified of his dismissal on 31 March 1995, and he filed a complaint alleging breach of contract in that the appointment letter constituted a contract for three years. The District Extension Director had the authority to offer plaintiff the appointment and the duties of the position, coupled with its supervision, clearly make the Area Education Extension Agent a State employee rather than the holder of a public office. Plaintiff was an employee of the State with a valid employment contract and the State impliedly consented to be sued for damages for breach of the contract.

Appeal by defendants from order entered 12 July 2000 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 23 May 2001.

*Voerman Law Firm, PLLC, by David P. Voerman and David E. Gurganus, for plaintiff-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Sylvia Thibaut and Assistant Attorney General Thomas O. Lawton, III, for defendants-appellants.*

CAMPBELL, Judge.

Defendants appeal the trial court's denial of their motion to dismiss and motion for summary judgment.[1] For the reasons discussed herein, we affirm the trial court.

By letter dated 26 July 1994 and signed by Everett M. Prosise ("Prosise"), District Extension Director, North Carolina Cooperative Extension Service ("NCCES"), plaintiff was offered appointment as Area Specialized Environmental and Natural Resources Education Extension Agent ("Area Education Extension Agent") with responsibilities in Onslow, Brunswick, New Hanover, Pender, Carteret, Craven, Pamlico and Beaufort Counties. According to the letter, the

---

1. For purposes of this appeal, defendants' motion to dismiss is converted into defendants' motion for summary judgment, because the record indicates that matters outside the pleadings were presented and considered by the trial court. *See N.C. Steel v. National Council on Compensation Ins.*, 123 N.C. App. 163, 472 S.E.2d 578 (1996). Therefore, we review the trial court's order as simply a denial of summary judgment.

position to which plaintiff was offered appointment was to be evaluated at the end of three years, at which time a decision would be made whether to continue the position. Plaintiff's salary was to be thirty-nine thousand dollars ($39,000) annually, paid from State sources, and plaintiff was advised that a performance appraisal was to be conducted at the end of his first year to assess his effectiveness. Plaintiff accepted the appointment and began his employment on or about 1 August 1994. After attending an orientation program, plaintiff began the performance of his duties, with his office located in Onslow County.

On or about 31 March 1995, plaintiff was notified by letter dated 1 March 1995 and signed by F. Daniel Shaw ("Shaw"), County Extension Director ("CED") for Onslow County, that he was being terminated from his position. The termination letter advised plaintiff that his position had been established on a probationary basis, and that based on plaintiff's unsatisfactory performance rating on his six-month performance appraisal, his employment was being terminated as of 31 March 1995. Plaintiff was informed that he would continue to receive his salary and employee benefits through 30 June 1995. By letter dated 4 April 1995 and addressed to Dr. Billy Caldwell, Director of the NCCES, plaintiff requested reversal of his termination and relocation to another county. Despite this request, plaintiff was terminated as of 31 March 1995 and paid through the end of June 1995.

On 31 March 1998, plaintiff filed the complaint in the instant action against the State of North Carolina, North Carolina State University, North Carolina State University College of Agriculture and Life Sciences, NCCES, Prosise, in his official capacity as District Extension Director of the NCCES, and Shaw, in his official capacity as CED of Onslow County (collectively, "defendants"). In his complaint, plaintiff alleged that the 26 July 1994 letter constituted a contract between him and defendants, whereby he would be employed for three years at an annual salary of $39,000.00, with a review of his performance to be conducted in one year. Further, plaintiff alleged that he was never advised of his status as a probationary employee prior to receiving the termination letter, and that he had satisfactorily performed all of the requirements of his position and his termination was not based upon any justifiable reasons or cause. Plaintiff alleged that defendants had breached the contract between the parties, and that defendants' breach was willful, intentional and malicious, entitling plaintiff to recover punitive damages.

By order dated 20 October 1999 and filed on 12 January 2000, Judge Jay D. Hockenbury denied defendants' motion for summary judgment. On 1 February 2000, the parties entered into a final pretrial order signed by Judge Charles H. Henry, and the trial was scheduled for 9 October 2000. On 23 March 2000, defendants filed a motion to dismiss and a motion for summary judgment, claiming defendants were entitled to sovereign immunity from plaintiff's suit. Defendants' motion was denied by order entered 12 July 2000 by Judge Charles H. Henry. Defendants appeal, arguing they are entitled to sovereign immunity. We disagree.

[1] We note initially that the order denying defendants' motion for summary judgment is interlocutory, and, as a general rule, such orders are not immediately appealable. *Price v. Davis*, 132 N.C. App. 556, 558, 512 S.E.2d 783, 785 (1999). If, however, "the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review[,]" an immediate appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1). *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995). We have repeatedly held "that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price*, 132 N.C. App. at 558-59, 512 S.E.2d at 785 (1999); *See also Derwort v. Polk County*, 129 N.C. App. 789, 501 S.E.2d 379 (1998). In the instant case, defendants have asserted a claim of sovereign immunity and, therefore, this appeal is properly before us.

[2] Defendants argue that summary judgment should have been granted as to plaintiff's breach of contract claim. Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2000). The movant bears the burden of proving that no triable issue exists, and he may do this "by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

Defendants contend that the doctrine of sovereign immunity protects them from plaintiff's suit. It has long been the established law of

North Carolina that the State and its agencies cannot be sued except with consent or upon waiver of sovereign immunity. *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998); *Truesdale v. University of North Carolina*, 91 N.C. App. 186, 192, 371 S.E.2d 503, 506 (1988), *disc. review denied*, 323 N.C. 706, 377 S.E.2d 229, *cert. denied*, 493 U.S. 808, 107 L. Ed. 2d 19 (1989). This immunity from suit also protects public officials sued in their official capacity. *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). However, the North Carolina Supreme Court has held "that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976). In *Whitfield v. Gilchrist*, 348 N.C. 39, 497 S.E.2d 412 (1998), the Supreme Court held that the State's waiver of sovereign immunity only applies to express contracts and that contracts implied in law, such as a claim in *quantum meruit*, are insufficient to constitute a waiver of the State's sovereign immunity. Thus, "[o]nly when the State has implicitly waived sovereign immunity by *expressly* entering into a *valid* contract through an agent of the State expressly authorized by law to enter into such contract may a plaintiff proceed with a claim against the State upon the State's breach." *Whitfield*, 348 N.C. at 43, 497 S.E.2d at 415 (emphasis in original).

Defendants argue that Prosise, as District Extension Director of NCCES, did not have the actual authority to enter into an employment contract with plaintiff, or anyone else, on behalf of the State of North Carolina or North Carolina State University. Therefore, defendants contend that the alleged employment contract in the instant case is not a valid contract expressly authorized by law and, thus, the State has not consented to being sued upon its breach. We disagree.

In his complaint, plaintiff alleges that Prosise, as District Extension Director, had the authority to enter into contracts with employees of the NCCES. In their answer, defendants admit that the 26 July 1994 appointment letter offered plaintiff employment as Area Education Extension Agent, and that plaintiff accepted employment with the NCCES. By affidavit dated 16 June 1999, Prosise admits that, as with all other CED and County Extension Agent ("CEA") positions, the final decision to hire plaintiff was a joint decision made by Prosise, as District Extension Director of the NCCES, and the NCCES Director of County Operations, with the advice and approval of the

NCCES Personnel Director. In his later affidavit, dated 21 March 2000, Prosise again admits that he offered plaintiff appointment as Area Education Extension Agent. However, in this subsequent affidavit, Prosise states that the appointment letter was not an offer of an employment contract, because he had no authority to offer a contract of employment to anyone under his supervision. Defendants also introduced the affidavit of Larry K. Monteith ("Monteith"), Chancellor of North Carolina State University ("NCSU") at the time plaintiff was offered appointment as Area Education Extension Agent. In this affidavit, Monteith states that he never granted Prosise the authority to enter into employment contracts on behalf of NCSU, but that as District Extension Director of NCCES, Prosise did have the authority to make offers of appointment to County Extension Agents.

We believe that this evidence indicates that Prosise in fact had the actual authority to offer plaintiff appointment as Area Education Extension Agent. By their sworn affidavits, both Prosise and former Chancellor Monteith admit that Prosise was authorized to offer the appointment. Having found no genuine issue of material fact, we conclude as a matter of law that Prosise was authorized to offer plaintiff the appointment. Therefore, the only way defendants can prevail on summary judgment on their claim of sovereign immunity is if plaintiff's appointment can properly be considered not to constitute an employment contract.

Defendants briefly address in their brief the argument that plaintiff's appointment does not constitute an employment contract. However, we are not persuaded by defendants' argument.

In order for plaintiff's breach of contract action against the State for the salary and other benefits he alleges he would have earned during the remainder of his unexpired three-year term as Area Education Extension Agent to be tenable, it must be based upon his status as a State employee under a valid contract of employment. *See Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976). In *Smith*, Chief Justice Sharp reiterated "the law of this State that 'an appointment or election to public office does not establish contract relations between the persons appointed or elected and the State.'" *Smith*, 289 N.C. at 307, 222 S.E.2d at 416 (quoting *Mial v. Ellington*, 134 N.C. 131, 149, 46 S.E. 961, 967 (1903) (citation omitted)).

In drawing the distinction between public office and employment, Chief Justice Sharp wrote:

"[A] position is a public office when it is created by law, with duties cast on the incumbent which involves some portion of the sovereign power and in the performance of which the public is concerned. . . ."

*Id.* at 307-08, 222 S.E.2d at 416 (citation omitted). Based on this distinction, the Court in *Smith held* that the plaintiff, Superintendent of Broughton Hospital, was an employee of the State, and, upon his appointment as superintendent, the State had entered into an employment contract with the plaintiff. The Court reasoned that, as Superintendent of Broughton Hospital, the plaintiff was simply a medical expert employed to supervise a psychiatric hospital owned and operated by the State. The plaintiff had no duties which required or permitted him to exercise any portion of the sovereign power of the State, such duties being exercised by the State Board of Mental Health.

In the instant case, plaintiff was appointed by the District Extension Director of the NCCES to the newly created position of Area Education Extension Agent. According to the affidavit of Prosise dated 16 June 1999, this position was created to serve as a consultant to County Extension Agents in the Southeast District on environmental and natural resources issues, with a focus on those issues affecting coastal counties. The office for the position was to be located in Onslow County, with the position being directly supervised by the Onslow County CED. The position was to be treated like any other CEA and CED position, with the final hiring decision to be made by the NCCES District Extension Director and the NCCES Director of County Operations, with advice and approval of the NCCES Personnel Director. Having been approved for funding, the position was advertised to the public by way of a vacancy announcement that read as follows:

> The individual in this position will monitor environmental regulations and the programming opportunities that affect North Carolina's counties. This position will be charged with supporting county programs with environmental information, developing grants to support programming for critical needs, coordinating state specialists, interpreting regulations, and assisting county staffs with special projects that affect their counties. Areas of responsibilities include: waste water and residuals management, storm water management, drinking water, solid waste, and environmental assessment. . . .

MOORE v. N.C. COOP. EXT. SERV.

[146 N.C. App. 89 (2001)]

The foregoing duties that the Area Education Extension Agent was expected to perform, coupled with the fact that the position was to be directly supervised by the Onslow County CED, with further supervision from the NCCES District Extension Director and the NCCES Director of County Operations, clearly make the Area Education Extension Agent a State employee, as opposed to the holder of a public office. The position of Area Education Extension Agent was not responsible for duties which require or permit the exercise of any portion of the sovereign power of the State. Therefore, we hold that plaintiff, through his appointment as Area Education Extension Agent, was an employee of the State with a valid employment contract.

Having found that plaintiff's appointment as Area Education Extension Agent constituted an employment contract between him and the State, and that Prosise had actual authority to offer plaintiff the appointment, we hold that the State has impliedly consented to be sued for damages on the contract in the event it breaches the contract. Therefore, defendants are not protected by the doctrine of sovereign immunity, and the trial court did not err in denying defendants' motion for summary judgment.

At this stage of the case, we are not concerned with the underlying controversy between plaintiff and defendants and thus want to emphasize that we are expressing no opinion as to whether the State breached its employment contract with plaintiff. However, we do hold that plaintiff was a State employee under an authorized and valid contract and that he is not precluded from presenting his claims against the State by the State's plea of sovereign immunity.

Affirmed.

Judges WYNN and BIGGS concur.